UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Michael Corosa
Plaintiff

v.

Nashua Housing Authority and
George F. Robinson
Defendants

Civil Action No. _____
Jury Trial Requested

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **COMPLAINT**

### I.   INTRODUCTION

1.   This is an action under the Americans with Disabilities Act, Title VII, 42 U.S.C. § 2000e, et seq.  Plaintiff alleges he suffered harassment and discrimination during the course of his employment in that he was not given reasonable accommodation for a qualified disability, spinal stenosis, arthritis and other back-related disabilities, and that he was harassed, treated in a disparate manner and suffered financial losses, humiliation, emotional distress and other damages as a result of the hostile work environment which is continuing.

The Plaintiff seeks to recover all damages as allowed by law, including liberal compensatory and punitive damages for the acts of discrimination resulting from the Defendants' wrongful conduct towards the Plaintiff.  Plaintiff asserts that as a result of the intentional misconduct, maliciousness, deliberate indifference, recklessness, negligence and/or gross negligence by the Defendants, Plaintiff Michael Corosa suffered damages, including but not limited to, harassment, retaliation, discrimination, loss of benefits, loss of wages (past and

1

future), aggravation, humiliation, embarrassment and other forms of distress for which he seeks to recover. Plaintiff reserves the right to file additional common law claims.

## II.     PARTIES

2. The Plaintiff, Michael Corosa, (hereinafter "Plaintiff"), is a resident of the Town of Hudson, New Hampshire and has lived in New Hampshire at all times relevant to this complaint, whose address is 2 Stanley Avenue, Hudson, New Hampshire.

3. Defendant, Nashua Housing Authority, (hereinafter "Defendant" or "NHA"), conducts its business at 40 East Pearl Street, Nashua, New Hampshire.

4. Defendant, George F. Robinson, is the Executive Director of the Nashua Housing Authority and works at 40 East Pearl Street, Nashua, New Hampshire.

## III.     JURISDICTION AND VENUE

5. This Court has jurisdiction over this claim pursuant to the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 2000e, et seq. The allegations recited herein represent a pattern and continuing violation of the Plaintiff's rights, which violation occurred up through the present time.

6. This Court also has pendant/supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any state law claims which Plaintiff may allege in the future under any amendment as allowed by law.

7. Venue is proper in this District because the alleged illegal actions occurred in New Hampshire.

8. The Plaintiff filed his charge with the US Equal Employment Opportunity Commission on or about August 22, 2008, alleging discrimination on the basis of disability. The EEOC issued a Notice of Right to Sue, Charge # 2008-00287, on October 14, 2009. The EEOC

made a finding that it could not conclude that the information obtained established a violation of the statutes. Plaintiff filed his claim within ninety (90) days of the October 14, 2009, EEOC decision.

## IV.     STATEMENT OF THE FACTS

9. The Plaintiff began his employment with the Defendant, Nashua Housing Authority, on October 21, 1993 as a maintenance worker and electrician.

10. Plaintiff suffers from spinal stenosis, arthritis and other back-related conditions.

11. In August of 2005, the Plaintiff noticed a problem with pain and weakness in his legs while he did a lot of walking, especially while pushing a lawn mower at work. He sought medical care, went through therapy and epidural shots. The lower back pain continued to get worse, especially down his left leg. After seeing his doctor, Yair Melamed, in January of 2006, he was given a doctor's note for work with restrictions, no pulling or pushing of objects while moderately walking, no shoveling, raking, etc. The Plaintiff brought the note to work and the NHA accepted the note, allowing him to work with restrictions.

12. On February 14, 2006, the Plaintiff could no longer stand the pain and went out on a medical leave of absence. In April of 2006, Plaintiff had lower back surgery. The surgery greatly relieved the pain in his back and legs. The Plaintiff returned to work full-time at the end of July 2006.

13. Between May and June of 2007, the Plaintiff experienced pain once again while using a push mower on the lawns of the NHA developments. Plaintiff was assigned to mow. The pain in his lower back and legs returned, but only while walking and pushing. Plaintiff had no problem performing his other maintenance duties which involving lifting, climbing,

shoveling, raking, etc. Lawn mowing involved 2 hours every 2 weeks which was approximately .25% of his job classification.

14. In late June or July of 2007, the Plaintiff put in a reasonable request to the NHA asking for an inexpensive riding lawn mower ($1,000.00). The Plaintiff's request was denied by the NHA stating that Plaintiff had no disability and did not merit a riding lawn mower.

15. The Plaintiff met with his surgeon (Dr. William Price) and was given a note restricting the Plaintiff from pushing or pulling objects while moderately walking. This was the limit of his restrictions. Lifting, raking, shoveling, climbing, etc. was not part of the restrictions.

16. On August 15, 2007, Plaintiff provided NHA with Dr. Price's note. The Defendants would not accept the note stating it was handwritten and difficult to read. Plaintiff obtained another note on August 16, 2007. This new note was promptly given to the NHA and it was accepted. Plaintiff worked with restrictions on 8/15/07, 8/16/07, 8/17/07, 8/18/07 and 8/19/07 (8/18 and 8/19 Plaintiff worked alone).

17. When Plaintiff came to work on August 22, 2008 and at 9:30 a.m., the Plaintiff received a letter from George Robinson (Executive Director NHA) stating Plaintiff could not perform his duties. Plaintiff was shocked. Plaintiff was not offered any alternative to work such as a "TAD" program. The Plaintiff was put out of work.

18. There have been numerous situations where a maintenance man has been allowed to work due to illness, disability, or sickness. Don St. Pierre was originally assigned to development of Arel Manor, however, due to his diabetic condition, had trouble with his feet. He was removed from his duties (all maintenance issues) from Arel Manor. He was removed because of his health problems and taking more time to complete his tasks and was reassigned to the office at 101 Major Drive doing jobs like cleaning, putting away stock, running errands, etc.

Don was never put on medical leave of absence, but Plaintiff was for not being able to perform .25% of his job classification.

19. In 2005, Charles Lefavor and in 2006, Miguel Miranda (both maintenance men) were on medical leave of absence. They were never told to relinquish their keys or radio to the NHA while they were on disability. When Plaintiff was forced out on disability, his boss Scott Costa, told him to give him the keys and radio. In fact, as of April 2008, Miguel Miranda was still on medical leave of absence and he had his keys and radio. This was done to the Plaintiff for the purpose to harass and intimidate him.

20. George Robinson has been harassing the Plaintiff ever since he returned to NHA in October of 2006. He gave the Plaintiff an oral warning for not calling the answering service on Saturdays and Sundays at the beginning and end of Plaintiff's shift. Because of the trouble that the NHA had with the answering service, the Plaintiff was told by his then boss, Brian Keefe, that he did not have to call in or out to the answering service. Mr. Robinson did not investigate the situation but immediately and unjustly gave the Plaintiff an oral warning. Mr. Robinson reluctantly removed the warning, but not until the Plaintiff demonstrated that he did nothing wrong.

21. The meeting with Mr. Robinson that forced the Plaintiff out on medical leave was not conducted in a proper manner. Mr. Robinson did not give the Plaintiff the letter personally. Defendant Robinson had Plaintiff's boss, Scott, do it in Scott's office. It was not behind closed doors and partially started before the union steward entered. Scott said he did not know what the letter contained, but was instructed to give it to Plaintiff. Everyone in the office could hear the contents of this meeting. When Plaintiff opened the letter and read that Plaintiff was to be put out of work on medical leave by Mr. Robinson, Plaintiff was upset and said this is nothing more

than harassment and is Robinson trying to be funny. At this point, Scott demanded Plaintiff's keys and radio.

22. On November 6, 2007, (Tuesday) the Plaintiff came into the shop to give his boss, Scott, the paperwork and doctor's note advising his employer that Plaintiff would return to work on November 7, 2007 (Wednesday) with no restrictions. Plaintiff then asked Scott for his keys and radio so he may return to work on November 7, 2007. Scott told Plaintiff he could not give him his keys and radio until Plaintiff's paperwork was processed in the office. Plaintiff called Scott numerous times on Tuesday to find out about his keys and radio. Plaintiff's telephone calls were totally ignored.

23. Plaintiff reported for work on November 7, 2007 and had to wait for another maintenance man to let him in the building. Around 8:30 a.m. on November 7, 2007, the Plaintiff was called into Scott's office with his steward, Dave Greenwood. Plaintiff was handed two more letters written by George Robinson. The first letter, which was dated November 6, 2007, stated to return to work on November 7, 2007 at 7:30 a.m. This letter should have been given to the Plaintiff on Tuesday, November 6th while Plaintiff was at the shop. The second letter was to inform the Plaintiff that he was being suspended for 2 days for being grossly insubordinate during the August 22, 2007 meeting with Scott and Plaintiff's steward. Defendant Robinson claimed Plaintiff supposedly swore at the meeting. Plaintiff did mention harassment and Robinson trying to be funny but did not swear.

24. A meeting with the Commissioners of the NHA (Mr. Robinson's bosses) occurred concerning the Plaintiff's medical leave and suspension. The Board upheld the action.

25. The workplace has been extremely hostile toward Plaintiff for sometime as a result of the conduct of the Defendants. The hostile work environment is continuing in nature.

The Defendants are trying to force the Plaintiff to quit or are trying to set him up to be fired because of his disability.

26. The Plaintiff performed his job duties well while employed by the employer.

27. The above mentioned actions and statements were sever and pervasive, constituting an abusive and hostile working environment toward the Plaintiff as one with a disability.  Plaintiff is unaware of other individuals being treated in the same manner as Plaintiff was treated.

28. The Defendants failed to take any effective action to remedy the discriminatory acts.  The Defendants are responsible for the actions of its employees alleged herein.

29. Defendants acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

30. Plaintiff submits the Cause of Action and reserves his right to file other state law claims that may be available to him.

## V. CAUSES OF ACTION

### COUNT I

### AMERICAN WITH DISABILITIES ACT
### 42 U.S.C. 12101 et seq.

31. The Plaintiff incorporates by reference each and every allegation made in paragraphs 1-30 above as if fully set forth herein.

32. Plaintiff is a qualified individual with a disability, spinal stenosis, arthritis and other back-related problems.  Plaintiff's medical condition prevents him from performing some of his job responsibilities.

33. Plaintiff requested his employer reasonably accommodate his disability in such a way that he could work which the Defendants refused.

7

34. To the extent Plaintiff is found not to be a qualified individual with a disability, then he alleges he was considered by his employer to be a person with a disability.

35. Plaintiff's disabilities impact his major or life activities of walking, standing and other activities.

36. Defendants failed to totally accommodate the Plaintiff and Plaintiff's request for an accommodation caused Defendants to treat Plaintiff in a hostile manner.

37. Instead of providing suitable accommodation, Defendants engaged in a course of conduct to either cause the Plaintiff to quit or to justify their termination of the Plaintiff.

38. Plaintiff claims damages which are within the jurisdictional limits of this Court, including punitive damages, liberal compensatory damages, back pay, front pay, lost benefits, loss of future earning capacity, damages for his emotional distress, embarrassment, humiliation, liquidated damages, his reasonable costs and attorney's fees, and an amount to compensate for any tax consequences of any such award.

39. As a direct result of Defendants' violation of the ADA as described herein, the Plaintiff has suffered injuries and damages as enumerated in paragraph 38 above, which Plaintiff hereby claims from Defendant.

WHEREFORE, Plaintiff respectfully requests that this Court:

    A. Award Plaintiff compensation for lost, past, and future earnings and benefits;

    B. Award Plaintiff compensatory damages, liquidated damages, and double damages;

    C. Award Plaintiff punitive damages;

    D. Award Plaintiff pre-judgment and post-judgment interest;

    E. Award Plaintiff an amount to compensate for any tax consequences of any award;

      F.      Award Plaintiff his reasonable attorney's fees and costs for prosecuting this action; and

      G.      For such other and further relief as this Court deems just and proper.

Respectfully submitted by,

Michael Corosa

Through his attorney,

Dated:  December 30, 2009

/s/ William Aivalikles
William Aivalikles, Esq.
60 Main Street, Suite 230
Nashua, NH  03060
(603) 880-0303
NH Bar # 308